UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CODELL PRIDE, JR., CDCR #H-61218,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>M. CORREA, DR. LEVIN, T. OCHOA, DR. SANTIAGO,<br><br>　　　　　　　　　　Defendants. | Civil No.   07cv1382 BEN (JMA)<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c); and**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO DISMISS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 62, 77] |

I.

STATEMENT OF THE CASE

Plaintiff David Codell Pride, Jr. ("Plaintiff"), a state prisoner currently incarcerated at Calipatria State Prison, is proceeding pro se and *in forma pauperis* under a Complaint filed pursuant to the Civil Rights Act, 42 U.S.C. § 1983.[1]  Currently before the Court is Defendants

---

[1] While this case was randomly referred upon filing to the Honorable Jan M. Adler, United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that a Report and Recommendation on the disposition of Defendants' Motion is not necessary. *See* S. D. CAL. CIVLR 72.3.a.

Correa, Santiago, Levin and Ochoa's Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 62] and Plaintiff's "Motion to Dismiss Motion for Summary Judgment" [Doc. No. 77].

## II.

### PROCEDURAL BACKGROUND

Defendants move for summary judgment on the grounds that the undisputed facts show Plaintiff cannot satisfy the elements necessary to prove a violation of the Eighth Amendment right to adequate medical care. On December 17, 2009, the Court advised Plaintiff of his right and obligation to oppose Defendants' Motion, pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc).[2] On February 23, 2010, Plaintiff filed a Motion for Extension of Time to File an Opposition. The Court granted the request and continued the hearing date to allow Plaintiff additional time to file his Opposition. [Doc. No. 69.] Plaintiff filed his Opposition to Defendants' Motion on April 22, 2010, to which Defendants filed a reply. In addition, on April 23, 2010, Plaintiff filed a "Motion to Dismiss Motion for Summary Judgment." [Doc. No. 76.]

Having now exercised its discretion to consider the matter as submitted on the papers without oral argument pursuant to S.D. CAL. CIVLR 7.1.d.1, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56, as detailed below.

## III.

### PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that on August 9, 2004, while incarcerated at Pelican Bay State Prison, prison doctor J.E. Lazore prescribed for him an "extra mattress"[3] due to a permanent shoulder

---

[2] *Klingele* and *Rand* require the district court "'as a bare minimum, [to provide a pro se prisoner] with fair notice of the requirements of the summary judgment rule.'" *Klingele*, 849 F.2d at 411 (quoting *Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968)). Thus, the district court is required to "tell the prisoner about his 'right to file counter-affidavits or other responsive materials and [to][ alert[] [him] to the fact that his failure to so respond might result in the entry of summary judgment against him.'" *Jacobsen*, 790 F.2d at 1365 n.8 (quoting *Klingele*, 849 F.2d at 411).

[3] The prescription was made pursuant to a medical "chrono" with an expiration date of August 9, 2005.

injury that causes Plaintiff considerable pain and sleeplessness. Compl. at 6, 18. On June 20, 2005, a prison doctor also prescribed for him a "[right] knee sleeve" due to a sports injury to Plaintiff's knee that causes the knee to slide out of joint, resulting in pain and swelling. Compl. at 4, 7, 17.[4] Sometime thereafter, Plaintiff was transferred to Calipatria State Prison. Compl. at 4.

On January 3, 2006, Plaintiff was examined by Defendant Santiago, a doctor at Calipatria State Prison, who stated he would request the "chrono committee to get [Plaintiff's] chronos renewed and request an egg crate mattress and chronos for both knee braces," as Plaintiff's left knee had "gotten worse" by compensating for the right knee. Compl. at 7. Defendant Santiago "explained to [Plaintiff] that Calipatria's no double mattress policy was the reason he'd request an egg crate mattress." Compl. at 7-8. On January 5, 2006, the Chrono Committee denied the requested treatment. Compl. at 4-5, 7-8. At the time in question, Defendant Levin was a member of the Chrono Committee; however, he was unable to attend the meeting so Defendant Correa, a registered nurse, attended on his behalf. Levin Decl., ¶¶ 2-6; Correa Decl., ¶ 6. Defendant Ochoa was the Acting Warden at the time and enforced the "no double mattress" policy. Compl. at 6; Ochoa Decl., ¶ 2.

Plaintiff alleges he told the nurses he is "in pain day and night." Compl. at 5. According to Plaintiff, Nurse Garcia (who is not a defendant in this action) told Plaintiff "that the chrono committee stated there was no proof of [Plaintiff's] injuries or an examination. S. Garcia then called the appeals coordinator and it was determined that an x-ray was needed to determine [Plaintiff's] injury, however, no x-ray was ever given." Compl. at 8.

Plaintiff alleges he is in constant pain and does not get enough sleep. Compl. at 8. Plaintiff must sleep on his sides, shoulders, or stomach on a two and one-half inch thick mattress on a steel slab, and, therefore, has poor blood circulation, is losing muscle mass, is stressed and tired all the time, and cannot exercise because of the pain and lack of rest. Compl. at 8-9. Plaintiff saw a prison nurse on March 13, 2007, who prescribed pain pills. Compl. at 9. He has

---

[4] Plaintiff states in the Complaint that "the same doctor," Dr. Lazore, prescribed the knee brace; however, the record indicates another doctor did so. *See* Compl. at 17.

1 taken so much ibuprofen that it no longer works and is negatively affecting his stomach lining.
2 Compl. at 9.

## IV.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.     Standard of Review

Federal Rule of Civil Procedure 56 provides, in relevant part, where "there is no genuine issue as to any material fact ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, the nonmoving party must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations on a motion for summary judgment. Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

### B.     42 U.S.C. § 1983

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the

1  United States ... to the deprivation of any rights, privileges, or immunities secured by the
2  Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004). The basis of
3  Plaintiff's Section 1983 claims in this case is the alleged violation of Plaintiff's constitutional
4  rights under the Eighth Amendment.

5      The Eighth Amendment prohibits punishment involving the "unnecessary and wanton
6  infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428
7  U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). The Eighth
8  Amendment is violated when prison officials are deliberately indifferent to a prisoner's serious
9  medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental,
10 and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982); *Hunt v. Dental Dept.*,
11 865 F.2d 198, 200 (9th Cir. 1989).

12     To survive summary judgment, Plaintiff must point to evidence in the record from which
13 a trier of fact might reasonably conclude that Defendants' medical treatment placed Plaintiff at
14 risk of "objectively, sufficiently serious" harm and that Defendants had a "sufficiently culpable
15 state of mind" when they either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d
16 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, Plaintiff must satisfy an
17 objective and subjective component of a two-part test. *Clement v. Gomez*, 298 F.3d 898, 904
18 (9th Cir. 2002); *Toguchi*, 391 F.3d at 1057 ("To establish an Eighth Amendment violation, a
19 prisoner 'must satisfy both the objective and subjective components of a two-part test.'")
20 (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

21     The "routine discomfort inherent in the prison setting," by itself, is not enough to satisfy
22 the objective prong of the Eighth Amendment. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th
23 Cir. 1999). Rather, the objective component may be satisfied if the prisoner shows his medical
24 need is sufficiently "serious" such that the "failure to treat [that] condition could result in further
25 significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904
26 (quotations omitted); *Lopez*, 203 F.3d at 1131-32; *see also Doty v. County of Lassen*, 37 F.3d
27 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think
28

worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

The subjective component requires the prisoner to show that prison officials had the requisite culpable mental state, *i.e.*, exhibited "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057.

Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett*, 296 F.3d at 744; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). In other words, an "official's failure to alleviate a significant risk that he should have perceived but did not, ... cannot ... be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Toguchi*, 391 F.3d at 1057 ("If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.") (brackets, footnote and citations omitted)). The Eighth Amendment prohibits only "the 'unnecessary and wanton infliction of pain,' [] includ[ing] those sanctions that are 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Hoptowit*, 682 F.2d at 1246 (quoting *Gregg*, 428 U.S. at 173, 183). "This is not an easy test for [a] plaintiff[] to satisfy." *Hallett*, 296 F.3d at 745.

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care

or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997); *Wood*, 900 F.2d at 1339-40; *see also Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Hunt*, 865 F.2d at 200 ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation.").

### 1. Objective Test

Defendants argue Plaintiff fails to satisfy the objective component of an Eighth Amendment inadequate medical care claim. The Court disagrees. The Declaration of Defendant Santiago indicates he examined Plaintiff and found that Plaintiff suffered from "bilateral knee pain." *See* Declaration of L. Santiago at ¶ 3. Defendant Santiago also found Plaintiff suffered from a "post-status gunshot wound, a fracture to his left humerus, an injury to his left scapula, and instability in both knees." *Id.* Plaintiff's medical records and Defendants' declarations substantiate Plaintiff's claim that his medical needs were objectively serious. *See Estelle*, 429 U.S. at 105. Therefore, at least at this stage of the case, Plaintiff has satisfied the objective component of his claim.

### 2. Subjective Test

Defendants next argue Plaintiff fails the subjective component of his claim. *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837. The Court agrees, as further set forth below.

#### a. Defendant Santiago

Defendant Santiago initially examined Plaintiff on January 3, 2006, after Plaintiff submitted a "Health Care Request Form." Santiago Decl. at ¶ 3, Ex. "A," Health Care Services Request Form dated November 20, 2005. In this request, Plaintiff indicated he was seeking a renewal of his "soft shoe [chrono], double mattress [chrono], as well as a knee brace, cane and a request that Plaintiff be handcuffed in the front "due to shoulder injury." *Id.*

Following the examination, Defendant Santiago issued a "Physician Orders" in which he "ordered that Mr. Pride be allowed Motrin, an egg-crate mattress, bilateral knee braces, he be handcuffed in waist chains, he be assigned to a low bunk on a bottom tier, and he be given soft tennis shoes." *Id.* at ¶¶ 4-5. Defendant Santiago also filled out a "Comprehensive Accommodation Chrono" that requested Plaintiff be "assigned to a ground floor cell, and a bottom bunk, he be given bilateral knee braces and soft tennis shoes, and he be handcuffed in waist restraints." *Id.* at ¶ 6. Defendant Santiago admits he inadvertently omitted the egg crate mattress in the chrono. *Id.*

Nonetheless, the evidence before this Court shows Defendant Santiago attempted to provide Plaintiff with necessary accommodations to treat his medical needs. Plaintiff argues Dr. Santiago should have followed up to ensure his recommended treatment was provided to Plaintiff. *See* Opp. at 13. Even if true, however, this contention is not sufficient to show a violation of the Eighth Amendment. *See, e.g., Farmer*, 511 U.S. at 838. Rather, the undisputed facts show Defendant Santiago played no role in the alleged denial of adequate medical treatment and he was not aware that Plaintiff did not receive the equipment that was initially prescribed. Therefore, Plaintiff cannot show that Defendant Santiago acted with "deliberate indifference" and, thus, Plaintiff cannot establish at least one element of his Eighth Amendment claim. As such, Plaintiff's claim against Dr. Santiago fails as a matter of law.

b.   *Defendants Levin and Correa*

Plaintiff seeks to hold Defendants Levin and Correa liable for the purported role they played on the "Chrono Committee." The purpose of the Chrono Committee was to review all chronos, such as the one issued by Defendant Santiago, "before the requested medical accommodation would issue." *See* Levin Decl., ¶¶ 4-5. Plaintiff alleges these Defendants wrongfully rejected the recommendations of Defendant Santiago, which resulted in further pain to him. *See* Compl. at 7-9.

On January 5, 2006, the Chrono Committee reviewed Plaintiff's Chrono issued by Defendant Santiago. *Id.* at ¶ 6. Defendant Levin did not participate in the meeting. *Id.* Rather, Defendant Correa, a Registered Nurse at Calipatria, acted as Defendant Levin's representative.

1  *See* Correa Decl., at ¶ 6; Levin Decl. at ¶ 6. Defendant Correa's role was to "note the
2  Committee's decisions regarding their review of the doctor's requested Comprehensive
3  Accommodation Chronos and sign the chronos on behalf of Dr. Levin." Correa Decl. at ¶ 6.
4  During the meeting, the Committee denied Defendant Santiago's recommendation for a ground
5  floor cell and bilateral knee braces. Levin Decl. ¶ 7, Ex. A, Comprehensive Accommodation
6  Chrono dated January 5, 2006.

7      While Defendant Correa signed the Committee's decision on behalf of Defendant Levin,
8  Correa admits she is not a medical doctor, is not qualified to assess the medical
9  recommendations set forth in Dr. Santiago's Chrono, and, in fact, did not assess such
10 recommendations. Correa Decl., ¶ 6, Ex. A. She "was not an active participant in the decisions
11 of the Chrono Committee on January 5, 2006." Correa Decl., ¶ 6. Other evidence submitted by
12 the Defendants corroborate these statements. *See, e.g.*, Levin Decl., ¶ 6. Plaintiff offers no
13 evidence to the contrary or to otherwise show that Defendant Correa played any role in the
14 alleged denial of adequate medical care. Therefore, as the undisputed facts show Defendant
15 Correa did not act with "deliberate indifference" to Plaintiff's serious medical needs, Plaintiff's
16 claims against Defendant Correa in this action fail as a matter of law.

17     While Defendant Levin did not attend the Committee's meeting on January 5, 2006,
18 Defendant Levin did review and respond to Plaintiff's administrative grievance challenging the
19 denial. *See* Defs.' Ex. E, Second Level Appeal Response, dated May 31, 2006, Log. No. CAL-
20 B-06-00228. In this response, Defendant Levin denied Plaintiff's request to have a chrono
21 issued for his knee braces and double mattress. *Id.* Specifically, Defendant Levin states that,
22 based on his "medical education, training, and experience, and my review of Mr. Pride's medical
23 records, his inmate appeal, Dr. Santiago's Comprehensive A ccommodation Chrono, Dr.
24 Santiago's Physician's Orders, and Dr. Santiago's notes of his exam of Mr. Pride... it is my
25 opinion that Dr. Santiago's exam of Mr. Pride was insufficient to justify a chrono for an egg-
26 crate mattress or bilateral knee braces." *See* Levin Decl. at ¶ 14. Plaintiff was informed that if
27 he was experiencing pain or discomfort, he could submit a new Health Care Services Request
28

Form for a re-evaluation from his primary care physician, but he failed to do so. Levin Decl., ¶¶ 16-17.

The undisputed evidence shows Defendant Levin treated Plaintiff based on the record before him. The record shows Defendant Levin disagreed with the findings made by Defendant Santiago because Levin believed that Santiago's examination was too cursory to support the conclusion that knee braces and an egg-crate mattress were medically justified at the time. *See* Levin Decl. at ¶ 15. As noted, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez*, 891 F.2d at 242. Plaintiff has provided no evidence to contradict the initial showing by Defendants that he received adequate medical care while he was housed at Calipatria. As such, the Court finds Plaintiff's claims against Defendant Levin fail as a matter of law.

    c.    *Defendant Ochoa*

Plaintiff sues Defendant Ochoa as the Acting Warden for Calipatria State Prison who was responsible for the prison's rules and policies at the time in question, including the double mattress policy at issue in this case. Compl., pgs. 2-5. Plaintiff alleges Calipatria's "no double mattress" policy deprived him of adequate medical care because it deprived him of the egg crate mattress prescribed by Defendant Santiago. *Id.*

To establish his claim, Plaintiff must show Defendant Ochoa implemented "a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force behind the constitutional violation.'" *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991) (citations omitted). In this case, Defendant Ochoa declares "Calipatria's no double-mattress policy is based on security concerns of the prison." *See* Ochoa Decl., ¶ 7. Defendant Ochoa further declares that prisoners "regularly use their mattresses to hide weapons, drugs and other contraband." *Id.* In addition, prisoners use their mattresses to "board up," meaning inmates use their mattresses "as a shield or barrier to prevent correctional officers from using O.C. spray on the inmate and to inhibit the correctional officers' access into the cell during a cell extraction." *Id.* at ¶ 8.

1    While there is no dispute that Calipatria instituted a policy against double mattresses, the
2  record does not show Calipatria instituted a policy against egg crate mattresses, which is the
3  medical treatment at issue in this case. Plaintiff also does not allege that an egg crate mattress
4  would have been insufficient for his medical needs. Plaintiff offers no admissible evidence or
5  expert opinion to demonstrate that a double mattress was even necessary for his medical
6  condition. Thus, the Court cannot find that the policy prohibiting Plaintiff from having double
7  mattresses was "so deficient" that Plaintiff's constitutional rights were violated. As such, the
8  Court finds Plaintiff's claims against Defendant Ochoa fail as a matter of law.

9    As detailed above, the undisputed facts show Plaintiff cannot establish the elements
10 necessary for an Eighth Amendment violation based on alleged inadequate medical care. As
11 such, Plaintiff's claims fail as a matter of law.

12    Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## V.

## MOTION TO DISMISS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff has filed a "Motion to Dismiss Defendants' Motion for Summary Judgment." [Doc. No. 77]. In this Motion, Plaintiff refers to "Defendant Garcia" and seeks a dismissal of Defendants' entire motion pursuant to FED.R.CIV.P. 56(f). *Id.*

However, Plaintiff failed to name Garcia as a Defendant in this matter. *See* Compl. at 1-3. Thus, any request for discovery related to Garcia is not grounds for a dismissal or continuance of the Motion. Plaintiff appears to now want to add Garcia as a Defendant nearly three years after he initially filed this action but he does not set forth any facts as to why he did not seek this information sooner. Moreover, he does not set forth any grounds by which the purported affidavit he seeks from Garcia would be helpful to his Opposition.

Thus, Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment is **DENIED**.

///
///
///

## VI.

### CONCLUSION AND ORDER

In light of the above, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 62] and **DENIES** Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment [Doc. No. 77]. The Court further **CERTIFIES** that an IFP appeal from this Order would be frivolous and, therefore, would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous). The Clerk of Court is directed to enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: 5/27/2010

HON. ROGER T. BENITEZ
United States District Judge